IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| JOHNNY R. BUCKNER, | ) | |
| AIS # 170365, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:08cv481-CSC |
| | ) | (WO) |
| | ) | |
| JAY JONES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Johnny R. Buckner ("Buckner"), a state prisoner, in which he presents claims against Lee County Sheriff Jay Jones ("Sheriff Jones"), Chief Deputy Sheriff Cary Torbert, Jr. ("Deputy Torbert"), Assistant Jail Administrator Ray Roberson ("Officer Roberson"), Corrections Counselor James Eason ("Officer Eason"), Corrections Officers Eddie D. Frazier ("Officer Frazier"), D'Metrius Hill ("Officer Hill"), Timothy Jones ("Officer Jones"), Timothy Parquette ("Officer Parquette"), Nicalous Person ("Officer Person"), James Scroggins ("Officer Scroggins"), Ronald Lyles ("Officer Lyles"), Armando Blanco ("Officer Blanco"), David Sellers ("Officer Sellers"), and Nurse Linda Stewart ("Nurse Stewart"). Specifically, Buckner contends that, during his confinement in the Lee County Detention Center, the defendants acted with deliberate indifference to his safety by failing to protect him from attacks by other inmates. In addition, he contends that Officer Eason and Nurse

Stewart acted with deliberate indifference to his safety and caused him emotional distress by placing his brother in a cell with him. Buckner seeks declaratory, injunctive and monetary relief for the alleged violations of his constitutional rights. Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.

The defendants filed a written report and supporting evidentiary materials addressing Buckner's claims for relief. Pursuant to the orders entered herein, the court deems it appropriate to treat the defendants' written report as a motion for summary judgment. (Doc. No. 4.) Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's responses in opposition to the motion, the court concludes that the defendants' motion for summary judgment is due to be granted.

## I.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir.2007) (per curiam); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that

there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation to rule omitted). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of a genuine issue of material fact. Thus, the burden shifts to the plaintiff to establish, with evidence beyond the pleadings, that a genuine issue material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991); *Celotex*, 477 U.S. at 324 (non-movant must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'"); Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial."). A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a

verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006).  Consequently, to survive the defendants' properly supported motion for summary judgment, Buckner is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of various constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted."  *Anderson*, 477 U.S. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Waddell v. Valley Forge Dental Assoc., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to

withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment. . . ."). Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave.*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children and Family Serv.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that

factual dispute is material to an issue affecting the outcome of the case." *McCormick v. Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact.  *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Sharpe fails

6

to demonstrate a requisite genuine issue of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

## II. FACTS

On February 16, 2007, Buckner was arrested on charges of first-degree rape involving a five-year-old child, first-degree sodomy, and enticement of a child into a vehicle. (Pl's Comp., Doc. No. 1, p. 3; Defs' Special Report, Doc. No. 27, Defs' Ex. B.) The local news media followed the case and reported the information. (Doc. No. 1, p. 3.) Upon arriving at the Lee County Detention Center, Buckner was concerned about the media coverage and requested that jail officials place him in a safe cellblock. (*Id*.; Pl's Resp., Doc. No. 35, p. 5.) Despite his request, Buckner was placed in a regular cell in general population. (*Id*.)

Four days later, Buckner was assaulted by two inmates. (Doc. No. 35, p. 6.) Officer Parquette responded to a call for officers to report to cell F-6. (Parquette's Affid., p. 1.) Upon his arrival, Officer Parquette saw Buckner standing by the vestibule with his bags packed and heard other inmates in the cell say "get [Buckner] out here, he's a child molester." (*Id*., p. 2.) Officer Parquette escorted Buckner to the medical unit, where he received treatment for his injuries. (*Id*., p. 2.) A nurse noted that Buckner had an imprint of a large shoe on his back, teeth marks on his left shoulder and two fingers, an area of discoloration on his forehead which appeared to be from "something cylindrical like batteries," as well as several areas of swelling, discoloration, and scratches on his head,

mid-back, left hip, and both arms and legs.  (Defs' Ex. F.)  Buckner was provided an ice pack and moved to the E-1 cell for medical observation.  (Parquette's Affid., p. 2.)  He received additional treatment from a physician the following day.  (*Id.*, Defs' Ex. G.)

After the assault, Officer Parquette questioned Buckner about the incident.  (Doc. No. 35, p. 6.)  Buckner told Officer Parquette that he believed that Officer Sellers had encouraged the assault by telling other inmates about the charges against him.  (*Id.*) Buckner also reported that Officer Sellers paid inmates cigarettes in return for assaulting him.  (*Id.*, pp. 6, 22.)  Officer Parquette told Buckner to write down what had happened and left.  (Doc. No. 35, p. 6.)  Ten minutes later, Officer Sellers threatened Buckner and indicated that Officer Parquette had told him what he had said.  (*Id.*)  Shortly afterward, Buckner contacted his lawyer, who advised him not to file anything against correctional officials until he was transferred to another correctional facility.  (*Id.*, p. 7.)  At some point, Buckner submitted a written request to talk with Sheriff Jones, but his request was denied.  (*Id.*)

On February 26, 2007, Buckner submitted an inmate request slip, in which he requested to speak with the Director of Jail Operations, Sheriff Jones, Deputy Torbert, or Lieutenant Welch concerning his case and housing situation.  (Defs' Ex. H.)  On March 6, 2007, Sergeant Rodney Tabb responded to Buckner's request and placed him in a protective custody cell.  (*Id.*; Doc. No. 35, p. 8.)

In April 2007, Officer Eason and Nurse Stewart arranged for Buckner's brother,

Terry Lee Buckner, to share a cell with him. (Doc. No. 1, p. 4; Doc. No. 35, p. 21.) At that time, Buckner's brother was undergoing alcohol withdrawal symptoms, suffering from hallucinations, and behaving irrationally. (Doc. No. 1, p. 4.) Officer Eason and Nurse Stewart told Buckner to monitor him. (*Id.*; Doc. No. 35, p. 21.) During the time the brothers shared a cell together in April and May 2007, Terry Lee Buckner ran into a wall, jumped off the bed, covered himself in soap, climbed the bars, remained awake for almost a week, and injured his head and the heel of his foot. (Doc. No. 1, p. 4.) Buckner asked Officer Eason and Nurse Stewart to strap down his brother, but they refused to do so. (Doc. No. 35, p. 21.)        On November 9, 2007, upon learning that he would be returned to the general population of the jail, Buckner begged Officers Eason and Lyles and Nurse Stewart to protect him from danger. He pleaded, "You know I'm in danger in population. I've already been jumped on, I can't go to population and ya'll know that." (Doc. No. 1, p. 3; Doc. No. 35, p. 10.) Shortly afterward, Buckner was moved to the 100 pod in general population. Twelve hours later, Officer Blanco conducted a head count of the inmates, leaving open the inmates' cell doors. (Defs' Ex. K; Doc. No. 1, p. 3; Doc. No. 35, p. 11.) After Officer Blanco left the 100 pod and went to the 200 pod, several inmates went into Buckner's cell and assaulted him. (*Id.*) Officer Person called Officer Blanco over the intercom and asked for assistance. (Defs' Ex. K, November 10, 2007 Report.)[1] Officer

---

[1] In his complaint, Buckner asserts that both Officer Person and Officer Blanco assisted the inmates by leaving the doors open. (Doc. No. 1, p. 3.)

9

Blanco returned to the 100 pod and moved Buckner to Room 111.  (*Id*.)  Shortly after the

incident, Buckner was examined by a nurse and moved to protective custody.  (Defs' Ex.

I.)  The following day, a physician treated Buckner's facial contusions, abrasions, and

swollen finger. (Defs' Ex. J.)

On February 20, 2008, Buckner was transferred to a state correctional facility.

(Defs' Ex. C.)  On March 1, 2008, Buckner sent letters to Captain Jackson and Sheriff

Jones, in which he indicated his intention to file a federal lawsuit.  (Attach. to Doc. No. 48.)

On June 16, 2008, he filed this federal lawsuit against the defendants.  (Doc. No. 1.)


## III.  DISCUSSION

### A.  An Available Administrative Process

Buckner asserts several claims that the defendants acted with deliberate indifference

to his health and safety.  Specifically, he contends:

(1)    Correctional officials failed to protect him from an attack by two inmates in cell F-6.  Buckner contends that the defendants should have known he would be assaulted because he was charged with the rape of a five-year old child.  He believes that correctional officials told his attackers about the rape charge and that Officer Sellers offered the inmates cigarettes to attack him.

(2)    Officers Eason and Lyles and Nurse Stewart failed to protect him from another attack by several inmates when they returned him to the general population of the jail.

(3)    Officers Blanco and Person failed to protect him from an attack by leaving the jail cell doors open during a routine head count in the 100 pod.

(4)     Officer Eason and Nurse Stewart subjected him to unconstitutional conditions of confinement and emotional distress when they moved his brother into a cell with him.

The defendants deny that they acted with deliberate indifference to Buckner's health and safety or that they subjected him to unconstitutional conditions of confinement.  In addition, they assert that Buckner failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  Specifically,  the defendants maintain that Buckner failed to exhaust the administrative remedies available to him at the Lee County Detention Center.  (Doc. No. 27, p. 8.)

The PLRA requires exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint.  Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Moreover, exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion

requirement.  *Jones v. Bock,* 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  *See also Booth*, 532 U.S. at 741; *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998).

Furthermore, the plaintiff is required by the PLRA to *properly* exhaust his claims. *Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378, 2387 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without some orderly structure on the course of its proceedings."  *Id*. at 2386.  Thus, "a prisoner must complete the administrative review process in accordance with applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court."  *Id*. at 2384.

It is undisputed that the Lee County Detention Center has a grievance procedure. Buckner, however, argues that he was unaware of a grievance procedure during his term of incarceration in the jail.  He also asserts that, although he did not file any written grievances concerning the specific claims in this case, he has properly exhausted his claims because his verbal requests to the defendants were of an emergency nature.

The Lee County Detention Center's inmate handbook provides that an "inmate may complete a request form stating his grievance" and that "[i]f an inmate is dissatisfied with the response he receives, he may appeal, in writing, to the next higher level in the chain of command of the Sheriff's Department."  (Attach. to Doc. No. 27, Defs' Ex. D.)  The

evidentiary materials indicate that, on February 26, 2007, Buckner submitted a written request form in which he requested a meeting with the Director of Jail operations concerning his case and housing situation.[2] (Attach. to Doc. No. 27, Defs' Ex. H.) Buckner does not dispute that he occasionally submitted inmate request forms; however, he argues that he was unaware that he could use a request form to file a grievance.

The defendants argue that Buckner was aware of the grievance procedure at the jail because all inmates are provided a copy of the inmate handbook during the booking process.  Buckner, however, denies that he received a copy of the handbook.  The defendants provided a copy of a "Lee County Sheriff's Department Regulations receipt" which indicates that Buckner received a copy of an Inmate Rules and Regulations Handbook during a previous term of incarceration.  (Doc. No. 50, Defs' Ex. A.)  The receipt is dated September 9, 1999.  (*Id.*)  In this case, however, the term of incarceration about which Buckner complains is between February 16, 2007, and November 10, 2007.  Thus, the receipt submitted by the defendants does not sufficiently support their assertion that Buckner received a copy of the handbook which included the applicable grievance procedure during his most recent term of incarceration at the Lee County Detention Center.

It is not clear from the record whether the administrative process in place at the Lee County Detention Center during Buckner's most recent term of incarceration was

---

[2] Buckner also filed a written inmate request form during a previous period of incarceration  in February 2006, in which he requested a private meeting with Jay Jones, Major Torbert, Captain Welch, and a Lee County Sheriff's Department detective concerning a prior assault.  (Attach. to Doc. No. 48.)  He also submitted numerous written request forms requesting the use of the library.  (Attach. to Doc. No. 35.)

"available" to Buckner.  An administrative remedy is not "available" if "'an inmate does not know about, and cannot discover through reasonable effort . . . remedies or requirements for remedies . . . by the time they are needed.'" *Williams v. Marshall*, No. 08-11311, 2008 WL 4787152 (11th Cir. 2008) (quoting *Goebert v. Lee County*, 510 F.3d 1312, 1322 (11th Cir. 2007)).  Although the record establishes that the Lee County Detention Center provided an administrative grievance procedure, it is not clear that Buckner was aware of the procedure.  Because the court concludes that Buckner has failed to demonstrate a disputed issue of fact with respect to his claims of deliberate indifference to his safety and his challenge to the conditions of confinement in the Lee County Detention Center, this court will no longer grapple with whether the claims for relief presented in this cause of action are subject to dismissal based on the plaintiff's failure to exhaust an available administrative remedy.  The court's reasons for determining that the motion for summary judgment should be granted are set forth below.

## B.  Official Capacity Claims and Eleventh Amendment Immunity

To the extent Buckner sues each of the defendants in their official capacity, the defendants argue they are immune from suit in their official capacities pursuant to the Eleventh Amendment.[3]  Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Under

---

[3]Eleventh Amendment immunity does not foreclose suits for injunctive and/or declaratory relief; rather, if applicable, it forecloses suits for compensable damage awards.

all facets of Alabama law, a county sheriff and his staff act as state officers "when supervising inmates and otherwise operating the county jails." *Turquitt v. Jefferson County*, 137 F.3d 1285, 1289 (11th Cir. 1998); *see* Ala. Const. Art. V, § 112 (designates county sheriff as member of State's executive department); *see also Parker v. Amerson*, 519 So. 2d 442 (Ala. 1987) (county sheriff is executive officer of the State). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 908, 79 L. Ed. 2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, [59], 116 S. Ct. 1114, 1125, 134 L. Ed. 2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997); *see also Powell v. Barrett*, 496 F.3d 1288, 1304, 1308 (11th Cir. 2007) (state defendants sued in their official capacity for monetary damages are immune from suit under the Eleventh Amendment).

In light of the foregoing, it is clear that the defendants are state officials entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994). Thus, the defendants are entitled to

absolute immunity from any claims for monetary relief presented against them in their official capacities. *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

## C. Individual Capacity Claims - Failure to Protect & Conditions of Confinement

Correctional officials may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it.[4] *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond[] reasonably to the risk.' *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970,

---

[4] In February 2007, Buckner entered the Lee County Detention Center on a warrant arising from his charges of first-degree rape, first-degree sodomy, and enticement of a child into a vehicle. Thus, it appears that the actions about which Buckner complains relate to incidents which occurred during his confinement as a pre-trial detainee. Nevertheless, regardless of his status, the applicable standard of review remains the same. *Bell v. Wolfish*, 441 U.S. 520, 99 S. Ct. 1861 (1979); *Lancaster v. Monroe County*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (citations omitted) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners.... However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees."); *Hamm v. De Kalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096, 106 S. Ct. 1492 (1986) (For analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment.); *Tittle v. Jefferson County Comm'n*, 10 F.3d 1535, 1539 (11th Cir. 1994) (observing that "[w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial.").

1982-83, 128 L. Ed. 2d 811 (1994).  A plaintiff must also show that the constitutional violation caused his injuries."  *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc).

In *Farmer*, the Court identified both objective and subjective elements necessary to establish an Eighth Amendment violation.  With respect to the requisite objective elements, an inmate must first show "an objectively substantial risk of serious harm ... exist[ed].  Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner."  *Marsh*, 268 F.3d 1028-1029.  As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference....  The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'  ...  *[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment*."  *Farmer*, 511 U.S. at 837-838 (emphasis added).  "Proof that the defendant should have perceived the risk, but did not, is insufficient."  *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (quoting *Farmer*, 511 U.S. at 838) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety....  It is *obduracy and wantonness, not inadvertence or error in good faith*, that characterize the

17

conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct

occurs in connection with establishing conditions of confinement, supplying medical needs,

or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312,

319 (1986) (emphasis added).

> To be deliberately indifferent, Defendants must have been
> "subjectively aware of the substantial risk of serious harm in order to have
> had a "'sufficiently culpable state of mind.'"" *Farmer*, 511 U.S. at 834-38,
> 114 S. Ct. at 1977-80; *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S. Ct. 2321,
> 2324-25, 115 L. Ed. 2d 271 (1991) . . . . Even assuming the existence of a
> serious risk of harm and legal causation, the prison official must be aware of
> specific facts from which an inference could be drawn that a substantial risk
> of serious harm exists - and the prison official must also "draw that
> inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). "The known risk of injury must

be a strong likelihood, rather than a mere possibility before a guard's failure to act can

constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990)

(citations and internal quotations omitted); *Rich v. Bruce*, 129 F.3d 336, 339-340 (4th Cir.

1997) (unless a prison official actually makes the inference that a substantial risk of serious

harm exists, he does not act with deliberate indifference even though his actions violate

prison regulations or can be described as stupid and lazy). As the foregoing makes clear,

"[m]erely negligent failure to protect an inmate from attack does not justify liability under

section 1983...." *Brown*, 894 F.2d at 1537. Thus, in order to survive summary judgment

on his deliberate indifference claims, Buckner is required to produce sufficient evidence

demonstrating (1) an objectively substantial risk of serious harm; (2) subjective awareness

of this risk on the part of the defendants; (3) the defendants responded to such risk in an objectively unreasonable manner; and (4) the actions/omissions of the defendants caused his injuries. *Farmer*, 511 U.S. at 837-838; *Marsh*, 268 F.3d 1028-1029; *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

### (1)    The Attack in F-6

The evidentiary materials establish that, prior to the assault on February 20, 2007, no defendant had knowledge of any animosity held by other inmates towards Buckner. Although Buckner asked officers in the booking area to place him in protective custody due to media coverage of his case, nothing in the record indicates that Buckner mentioned to the defendants that he had a problem with his cell mates or that he had personal knowledge that his cell mates were aware of the charges against him and planned to attack him four days after his placement in cell F-6. *Cf. Skipper v. Hill*, No. 2:06cv24, 2006 WL 3759818, *2 (W.D. Mich. Dec. 19, 2006) (noting that officer's one instance of telling other prisoners that plaintiff in administrative segregation had assaulted Rosa Parks, as the story was told in the media, was too isolated to demonstrate a substantial risk of harm to the plaintiff) (citing *Skipper v. Hill*, 2:04cv121, doc. #28 (6th Cir.)) (unpublished).  Moreover, Buckner's belief that Officer Sellers offered inmates cigarettes in return for attacking Buckner or that the officers told the other inmates about the charges against him is based on nothing more than speculation.  The record therefore contains no evidence that the attack by the other inmates occurred due to deliberate indifference or reckless disregard by the defendants to

Buckner's safety.  Specifically, Buckner presents no evidence of an objectively substantial risk of serious harm nor is there any evidence demonstrating subjective awareness of a substantial risk of such harm by the defendants, each of which is a required element of his deliberate indifference claim.  "Plaintiff has failed to establish that the Defendant[s] had a subjective awareness of a substantial risk of serious physical [harm] to Plaintiff; thus, Plaintiff has failed to establish a required element of this claim.  When viewing the evidence most favorably toward Plaintiff, a claim for deliberate indifference has not been established. . . ."  *Carter*, 352 F.3d at 1350 (footnote omitted).  Consequently, summary judgment is due to be granted in favor of the defendants as Buckner has failed to demonstrate a genuine issue of material fact with respect to this deliberate indifference claim.

### (2)    The Attack in 100 Pod

On November 9, 2007, Buckner was moved from protective custody to a cell in the 100 pod area.  Earlier that day, Buckner had pleaded with Officers Eason and Lyles and Nurse Stewart that he not be returned to the general population.  During a routine headcount the next day, Buckner was assaulted by other inmates in his cell.  Buckner asserts that, due to the previous attack in February 2007 in which inmates threatened to "get him," the defendants should have known that returning him to the general population of the

jail would place him in danger.[5]  (Doc. No. 35, p. 11.)

The fact that Buckner was assaulted by other inmates nine months prior to the November 10, 2007 altercation "does not provide a sufficient basis to make the inferential leap that a substantial risk of serious harm to Plaintiff existed [at the time of the second attack]." *Carter*, 352 F.3d at 1350.  Additionally, Buckner presents no evidence indicating that any defendant "had a subjective awareness of a substantial risk of serious physical threat  to Plaintiff. . . ."  *Id*.  Thus, Buckner has not established a requisite element of his deliberate indifference claim.  Consequently, Officers Eason and Lyles and Nurse Stewart are entitled to summary judgment on this claim.

Buckner also asserts that, shortly before the assault, Officers Person and Blanco acted with deliberate indifference to his safety.  Specifically, Buckner asserts that Officer Blanco violated jail procedures by leaving open the cell doors in 100 pod during a routine headcount, thereby allowing other inmates to enter his cell and attack him.  The "failure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence." *Taylor v. Adams*, 221 F.3d 1254, 1259 (11th Cir. 2000).  *See also Andujar v. Rodriguez*, 486 F.3d 1199, 1204 n. 5 (11th Cir. 2007); *Doe v.*

---

[5] In his response, Buckner alleges that the defendants returned him to general population "with the same inmates who were 'going nuts' threatening to 'get' [him]" during the previous assault in February 2007.  (Doc. No. 35, pp. 11, 18.)  There is no evidence that the named defendants knew that the inmates in the 100 pod were the same inmates who assaulted and threatened Buckner in February.  Moreover, the record indicates that the first assault occurred in a different area of the jail.  Additionally, Buckner's speculation that the inmates who threatened him during the February assault were the same inmates who assaulted him during the second assault does not comply with Fed.R.Civ.P. 56(e).

*Ga. Dep't of Corr.*, 248 Fed. Appx. 67, 71 n. 4 (11th Cir. 2007).  Nothing in the record indicates that Officers Person and Blanco were "aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exist[ed]," *Farmer*, *supra*. In addition, the evidentiary materials indicate that Officer Person arrived after Officer Blanco called for assistance and after the assault began.  Because he was not present during the headcount, Officer Person could not have anticipated that Officer Blanco would have left the doors open and that an assault would occur.   "The mere fact that an assault occur[red] . . . does not establish the requisite indifference to a prisoner's constitutional rights."  *Zatler v. Wainwright*, 802 F.2d 397, 402 (11th Cir. 1986).  This court therefore concludes that Officers Person and Blanco are entitled to summary judgment with respect to this claim.

### (3)    Buckner's Brother

To the extent Buckner attempts to present claims relative to the violation of the constitutional rights of his brother who was incarcerated in the Lee County Detention Center, Buckner lacks standing to assert the constitutional rights of another person as he is not "asserting his ... own legal rights and interests [but] rather ... the legal rights and interests of [a] third part[y]."  *Saladin v. Milledgeville*, 812 F.2d 687, 690 (11th Cir. 1987); *Allen v. Wright*, 468 U.S. 737, 751 (1984).  To the extent Buckner argues that his brother

22

could have harmed him and that he feared for his own safety, his contention is entirely speculative. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) (holding that a plaintiff's "factual allegations must be enough to raise a right to relief above a speculative level. . . ."). *See also Brown*, 894 F. 2d at 1537. Therefore, Buckner's claim on behalf of his brother and his claim that the defendants acted with deliberate indifference to his own safety by placing his brother in his cell entitle Buckner to no relief and summary judgment on these claims is due to be granted in favor of the defendants.

To the extent Buckner's complains that the defendants subjected him to deplorable living conditions by placing his brother, who was suffering from hallucinations and behaving irrationally, in his cell with him, he is likewise entitled to no relief. Only those conditions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "'[T]he Constitution does not mandate comfortable prisons.' *Id.* at 349, 101 S. Ct. at 2400. If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.' *Id.* at 347, 101 S. Ct. at 2399. Generally speaking, prison conditions rise to the level of a constitutional violation only when they 'involve the wanton and unnecessary infliction of pain.' *Id.*" *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). As previously discussed, a correctional official may likewise be held constitutionally liable for acting with "'deliberate indifference'" to an inmate's health or safety when the official knows that the inmate faces

"a substantial risk of serious harm" and disregards that risk by failing to take reasonable measures to abate it.  *Farmer*, 511 U.S. at 828.  A constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively aware, ... and [that] the official does not respond[] reasonably to the risk'...."  *Marsh v. Butler County*, 268 F.3d at 1028, *quoting Farmer*, 511 U.S. at 844.

In order to survive summary judgment on his claim challenging the conditions of confinement at the Lee County Detention Center, Buckner is therefore "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant['s] deliberate indifference to that risk; and (3) causation."  *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995); *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).

The living conditions within a jail will constitute cruel and unusual punishment when the conditions involve or result in "wanton and unnecessary infliction of pain. . . . Conditions . . . , alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities.  Such conditions could be cruel and unusual under the contemporary standard of decency . . . .  But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional."  *Rhodes*, 452 U.S. at 347. "[C]onduct that does not purport to be punishment at all [such as claims related to conditions of confinement] must involve more than ordinary lack of due care for the prisoner's interests or safety. . . .  It is ***obduracy and wantonness, not inadvertence or error in good faith***, that characterize the conduct prohibited by the Cruel and Unusual

24

Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (emphasis added).

To determine whether conditions of confinement constitute cruel and unusual punishment, the court must look to "the effect" the condition has upon the inmate. *Rhodes*, 452 U.S. at 366. In a case involving conditions of confinement generally or several different conditions, the court is required to consider whether the claims together amount to conditions which fall below constitutional standards. *Hamm v. De Kalb County*, 774 F.2d 1567 (11th Cir. 1985), *cert. denied Hamm v. De Kalb County*, 475 U.S. 1096, 106 S. Ct. 1492, 89 L. Ed. 2d 894 (1986); *see also Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991). The court's consideration of whether the totality of the plaintiff's claims amount to conditions which fall below applicable constitutional standards is limited by the Supreme Court's admonishment that "*[s]ome* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need.... To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Wilson*, 501 U.S. at 304-305 (emphasis in original).

25

Buckner's allegation that his brother was behaving in an irrational manner in his cell does not rise to the level of cruel and unusual punishment because Buckner presented no evidence, sufficiently probative or otherwise, which shows obduracy or wantonness on the part of the defendants. *Whitley*, 475 U.S. at 319. Moreover, Buckner fails to demonstrate any effect the alleged constitutional violations had upon him. Instead, his complaint and responses focus upon potential risks, possible consequences and speculative damages.

Upon careful review of the evidentiary materials filed in this case, the court concludes that the challenged conditions did not deprive Buckner of the minimal civilized measure of life's necessities nor subject him to a wanton and unnecessary infliction of pain. *Wilson*, 501 U.S. at 298-299; *Rhodes*, 452 U.S. at 347. In addition, the evidence before the court simply does not support a finding that the defendants acted with deliberate indifference or reckless disregard to Buckner's constitutional rights. The conditions at the Lee County Detention Center, although uncomfortable or even harsh, do not constitute cruel and unusual punishment. *Rhodes*, 452 U.S. at 349; *Farmer*, 511 U.S. at 833. "Because routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society,' extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Consequently, summary judgment is due to be granted in favor of the defendants on these claims. *See McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *see also Carter*, 352 F.3d at 1349-1350.

## IV. CONCLUSION

26

In accordance with these conclusions, judgment will be entered in favor of all defendants and against the plaintiff.  A separate final judgment will be entered.

Done this 15th day of July, 2009.


      /s/Charles S. Coody               
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE